IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Angel Welch,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Professional Transit Management of Tucson, Inc., d/b/a/ Sun Tran,<br><br>　　　　Defendant. | No. CV 03-631-TUC-CKJ<br><br>**ORDER** |

Pending before the Court is Defendant's Motion for Summary Judgment. For the reasons stated below, the motion is granted.

**I. Standard of Review**

Summary judgment is appropriate where "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* Thus, the "mere scintilla of evidence" in support of the nonmoving party's claim is insufficient to defeat summary judgment. *Id.* at 252. However, in evaluating a motion for

1  summary judgment, "the evidence of the nonmoving party is to be believed, and all
2  justifiable inferences are to be drawn in his favor." *Id.* at 255.

3  **II.  <u>Factual Background</u>**

4  In 1996, Plaintiff (Angel Welch) began working for Defendant (Sun Tran) as a bus driver.
5  While employed by Sun Tran, she was a member of Teamsters Local Union No. 104
6  ("Union"), and her employment was governed by the terms of a collective bargaining
7  agreement ("CBA") between Sun Tran and the Union. In July of 2003, Welch was attacked
8  while she was driving a bus; as a result of injuries she suffered that day, she was temporarily
9  transferred to a light duty, non-safety-sensitive position in the money room at Sun Tran. On
10 the morning of July 21, 2003, Welch obtained a full release to go back to her normal duties
11 as a bus driver from MBI Occupational Health Clinic ("Clinic"). Thereafter, Welch gave the
12 release to Harold Ramsey, Sun Tran's Direction of Operations. As Welch would be returning
13 to work from a non-safety-sensitive position in the money room to a safety-sensitive position
14 as a bus driver, Ramsey ordered her to return to the Clinic to take a drug test. At that time,
15 Sun Tran's policy required all employees to pass a drug test prior to transferring from a non-
16 safety-sensitive position to a safety-sensitive position.

17 Welch returned to the Clinic, and submitted a urine specimen to Teresa Bolinski, a
18 technician at the Clinic. However, the urine specimen was unacceptable as it exceeded the
19 temperature range on the sample cup; as such, Bolinski informed Welch that she had to
20 submit another, observed specimen. Bolinski also informed Welch that she could not leave
21 the clinic without submitting another specimen, or it would be considered a positive result
22 for drugs. This message was repeated to Plaintiff by the Clinic's administrator, Mari
23 Figueroa. In addition, Bolinski called Dolores Brumit, Sun Tran's "Designated Employer
24 Representative," to inform her of the situation. Welch also spoke with Brumit, and she told
25 Brumit that she had to leave as she had a therapy appointment she did not want to miss.
26 However, Brumit told her that if she failed to provide another urine sample before leaving
27 the Clinic, she would be suspended, and likely fired. Upon hearing this, Welch began
28 screaming, crying, pounding on the desk, and insisting that she had to go see her therapist;

1  at this point, Brumit said "go ahead and leave." Plaintiff left the clinic without submitting
2  another urine sample.
3      On July 22, 2003, Sun Tran management suspended Welch, pending an investigation for
4  violation of the CBA which provides that an employee may be fired for insubordination for
5  failing to follow reasonable orders and illegal use of drugs. On August 1, 2003, after the
6  investigation, Welch was fired for illegal use of drugs and insubordination based on her
7  failure to complete the drug test ordered by Ramsey.
8      Pursuant to the CBA, an employee must follow a five-step grievance procedure for
9  complaints related to employment issues governed by the CBA. As Welch was terminated,
10 step one of the procedure was waived, but she was obligated to follow steps 2 through 5
11 which are:

> Step 2: The aggrieved employee files a grievance in writing with the Company. The Company must hold a meeting with the aggrieved employee and a union representative within 3 days of receiving the written grievance and provide a response to the grievance within 3 days after the meeting.
>
> Step 3: If the aggrieved employee is not satisfied with the results of Step 2, the Union shall request in writing a meeting with the aggrieved employee, Union Steward and Company general manager. The Company must provide a response to the meeting within 3 days.
>
> Step 4: If the aggrieved employee is not satisfied with the results of Step 3, the Union must seek mediation within 10 days of receipt of the Step 3 response.
>
> Step 5: If mediation is unsuccessful, the Union and Company must submit the dispute to binding arbitration.

20     On August 5, 2003, Welch filed a Step Two grievance which Sun Tran subsequently
21 denied. Welch then asked the Union to file a Step 3 grievance. However, the Union refused
22 to file a Step 3 grievance and it also informed Welch that the grievance was being withdrawn
23 altogether as it was evident that Welch directly violated Sun Tran policy by failing to
24 satisfactorily complete the drug test. Welch took no other steps to pursue her grievance and
25 never took any steps against the Union for withdrawing the grievance. Thereafter, Plaintiff
26 filed her Complaint against Defendant alleging: (1) Breach of Contract; and (2) Wrongful
27 Termination in violation of public policy pursuant to the Arizona Employment Protection Act
28 ("EPA").

## III. Discussion

### A. Breach of Contract

As Defendant correctly argues, Plaintiff's state law claim for breach of contract must fail as it is preempted by Section 301 of the Labor Management Relations Act ("LMRA"). *See* 29 U.S.C. §185(a). Plaintiff concedes that her claim is preempted, and asks the Court to treat her claim as one pursuant to Section 301. As such, Plaintiff's breach of contract claim is dismissed. The Court will analyze Plaintiff's claim under the LMRA.

### B. LMRA Claim

#### 1. Failure to Exhaust

As a threshold matter, Defendant argues that Plaintiff failed to exhaust her remedies under the CBA, and therefore her claim must fail. Defendant correctly argues that a "bargaining unit employee may not bring an action for breach of a collective bargaining agreement unless he has exhausted the contractual grievance procedures . . . This rule prevents employees from sidestepping available grievance procedures when a dispute involves an interpretation of the collective bargaining agreement, and insures that where the parties to a collective bargaining agreement have agreed that a neutral arbitrator will be responsible in the first instance for interpreting the collective bargaining agreement, the arbitration provisions do not lose their effectiveness." *Truex v. Garrett Freightlines, Inc.*, 784 F.2d 1347, 1353 (9th Cir. 1985); *see also Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1189 (9th Cir. 2001)("Insofar as [Plaintiff] argues she was terminated in violation of the CBA, the agreement required her to pursue such claims in binding arbitration. Because she failed to seek redress as provided in the CBA, she cannot now resort to the courts to adjudicate these claims.").

#### a. The Exception in *Grove* is Inapplicable

There is no dispute that Plaintiff failed to exhaust the grievance procedures in the CBA. Plaintiff filed a written grievance pursuant to Step 2 of the grievance procedures, but Steps 3 through 5 were not pursued as the Union itself withdrew the grievance as it found that Plaintiff grievance was without merit. Thus, unless Plaintiff can demonstrate that an

- 4 -

exception applies, Plaintiff's claim must fail for failure to exhaust the procedures in the CBA. *See id.*

Relying solely on *Groves v. Ring Screw Works, Ferndale Fastener Div.*, Plaintiff first argues that she was not required to exhaust her remedies under the CBA as the grievance procedures between the Union and Sun Tran were not mandatory. *See Groves*, 498 U.S. 168 (1990). In *Groves,* the Court found that where the CBA only contained a voluntary multistep grievance procedure and did not include a requirement that the parties submit their dispute to binding arbitration, the plaintiff was not required to exhaust the procedures in the CBA prior to filing suit in court. *Id.* at 170, 175. Further, the Court found that where the CBA at issue reserved the union's and employees' rights to resort to "economic warfare" such as strikes and lockouts if the grievance procedure failed, this provision could not be construed as an agreement to prohibit judicial review because Congress passed the LMRA to facilitate less drastic, peaceful resolutions of labor disputes; the provision in question in *Groves* undermined these Congressional purposes behind the LMRA. *Id.* at 174. Plaintiff argues that the CBA in this case contains language identical to that in *Groves*, and as such, exhaustion is unnecessary. While it is true that both the CBA in *Groves* and this case contain language that the parties shall make an "earnest effort" to settle their dispute pursuant to a multistep grievance procedure, this does not conclusively resolve the issue in Plaintiff's favor. *See id.* at 170 n.3; Defendant's Ex. 5(CBA at 4-7). In *Groves*, as pointed out by the Supreme Court, the CBA's multistep grievance procedure at issue did not include "a requirement that the parties submit disputes to binding arbitration." *Id.* However, the CBA at issue in this case sets out a multistep grievance procedure actually culminating in final and binding arbitration. Specifically, the CBA states that the "[d]ecision of the arbitrator will be final and binding on all parties . . ."; the CBA also states that "[i]f either party fails to meet the time limits [specified in the multistep grievance procedure of the CBA], the case of the other party shall prevail . . ." *Id.* Thus, as Defendants argue, this CBA is more like the CBA

at issue in *Republic Steel Corp. v. Maddox*, 379 U.S. 650 (1965).   In *Maddox*, the CBA required that:

> Any Employee who has a complaint may discuss the alleged complaint with his Foreman in an attempt to settle it. Any complaint not so settled shall constitute a grievance within the meaning of this Section, 'Adjustment of Grievances'.
> 'Grievances shall be handled in the following manner:
> 'STEP 1. Between the aggrieved Employee, his Grievance Committeeman or Assistant Grievance Committeeman and the Foreman.'
> The procedure calls for two more grievance-committee steps capped with binding arbitration of matters not satisfactorily settled by the initial steps.

*Id.* at 658, 663 n.2.  Thus, although the CBA in *Maddox* initially used the word "may" in regards to the grievance procedure, the procedure culminated in grievances being appealed to an arbitrator and that the "decision of the Arbitrator shall be final." *Id.* at 663 n.2.  Under these circumstances, the Court found that "[u]se of the permissive 'may' does not of itself reveal a clear understanding between the contracting parties that individual employees . . . are free to avoid the contract procedure and its time limitations in favor of a judicial suit. Any doubts must be resolved against such an interpretation." *Id.* at 658-59.  Thus, the Supreme Court held that the plaintiff was required to exhaust procedures in the CBA prior to filing suit. *Id.*  Similarly, in light of the CBA language at issue in this case, this Court finds that the exception in *Grove* is inapplicable, and therefore Plaintiff was required to exhaust the procedures in the CBA prior to filing suit in this case unless a different exception applies.

### b. There is No Evidence of Unfair Representation

Plaintiff argues that even if the *Groves* exception does not apply, the exhaustion requirement is excused as the Union failed to fairly represent her in advancing her grievance with the employer.  Plaintiff argues that she attempted to exhaust the grievance procedures, but the Union independently, and in bad faith withdrew her grievance after Step 2.  As such, Plaintiff argues that she is privileged to file suit against Defendant despite the failure to exhaust.  While it is true that exhaustion is excused where the Union fails to fairly represent

the employee in the grievance process, the burden of showing such a failure is quite stringent; as the Ninth Circuit has discussed:

> If the Union's conduct toward [the plaintiff employee] was arbitrary, discriminatory, or in bad faith, it would constitute a breach of its duty of fair representation . . . An employee has no absolute right to have a grievance taken to arbitration, but a union may not arbitrarily ignore a meritorious grievance nor process it perfunctorily . . . On the other hand, the grievance process need not be error free-to constitute a breach of the duty of fair representation, more than a mere error of judgment must occur . . . As a result, courts will interfere with union decisions about employee grievance proceedings only if a union shows reckless disregard for the rights of an employee . . . Mere negligence on the part of the union does not constitute a breach of the union's duty . . . However, an act of omission by a union may be so egregious and unfair as to be arbitrary, thus constituting a breach of the duty of fair representation . . . But in general, evidence of hostility, arbitrariness, or bad faith is required.

*Castelli v. Douglas Aircraft Co.*, 752 F.2d 1480, 1482-1483 (9th Cir. 1985)(holding that if there were "errors, they were at most errors of judgment, and not evidence of breach of the duty of fair representation."); *see also Johnson v. U.S. Postal Service*, 756 F.2d 1461, 1465 (9th Cir. 1985)("A union's conduct is arbitrary if without rational basis . . . The Supreme Court has emphasized that unions must have wide discretion to act in what they perceive to be their members' best interests . . . This circuit also has stressed the importance of preserving union discretion by narrowly construing the unfair representation doctrine . . . Unions need not arbitrate every case . . . One reason is the high cost of arbitration . . . Unions may screen grievances and arbitrate only those they believe are meritorious . . . Courts may upset union decisions on employee grievances only if the union shows reckless disregard for an employee's rights . . . To constitute arbitrary conduct, omissions must be egregious, unfair and unrelated to legitimate union interests."); *Burkevich v. Air Line Pilots Ass'n, Intern.*, 894 F.2d 346, 352 (9th Cir. 1990)(union's judgment call, even if poorly made, does not constitute breach of the duty of fair representation; "What must be shown is that the judgment was exercised discriminatorily or in bad faith.")*; Ness v. Safeway Stores, Inc.*, 598 F.2d 558, 560 (9th Cir. 1979)("The union is accorded great latitude . . . in the handling of employee grievances, and the courts are hesitant to interfere with union decisions regarding the handling of employee grievances unless they show a reckless disregard for the rights of the individual employee.").

Plaintiff argues that the Union unfairly represented her as the record clearly shows that the Defendant breached the CBA; thus, Plaintiff argues that the Union should have followed through on all the steps of the grievance procedure. Plaintiff argues that the CBA mandates that employees can only be fired for "just cause," and that Defendant's justifications for her termination (insubordination, illegal use of drugs) are without basis which proves no "just cause" for her termination.

As to insubordination, there is no dispute that Plaintiff failed to follow her direct supervisor's order to satisfactorily complete a drug test. Plaintiff argues, however, insubordination is defined in the CBA as "the refusal to follow a reasonable order given by a supervisor in direct line of authority." Plaintiff argues that the order was not reasonable as the foundation relied upon for the order was erroneous. Plaintiff stresses that the sole basis for ordering the drug test was based on the fact that she was transferring from a non-safety-sensitive position to a safety-sensitive position; however, Plaintiff was in the non-safety-sensitive position for less than 90 days. As relevant to these circumstances, the CBA provides that the "Company and the Union will comply with all Federal Transportation Administration [FTA] federal regulations as they apply to drug and alcohol testing." There are two FTA regulations related to this issue. 49 C.F.R. 655.41(b) states: "An employer may not transfer an employee from a nonsafety-sensitive function to a safety-sensitive function until the employee takes a pre-employment drug test administered under this part with a verified negative result." 49 C.F.R. 655.41(d) states: "When a covered employee or applicant has not performed a safety-sensitive function for 90 consecutive calendar days regardless of the reason, and the employee has not been in the employer's random selection pool during that time, the employer shall ensure that the employee takes a pre-employment drug test with a verified negative result."

Only after Plaintiff was terminated, both parties learned that the FTA interpreted 49 C.F.R. 655.41(b) and 49 C.F.R. 655.41(d) together such that a drug test is not required unless an employee has been out of the safety-sensitive position for 90 or more days. As Plaintiff was

- 8 -

out of her safety-sensitive position for less than 90 days, Plaintiff argues that the regulations did not require a drug test, and that her supervisor's order was therefore unreasonable. Thus, Plaintiff argues that she only failed to follow an unreasonable order, and therefore her actions were not insubordinate.

In response, Defendant argues that Plaintiff's claims clearly do not show that the Union acted "arbitrary, discriminatory, or in bad faith" in deciding not to pursue her grievance past Step 2. *Castelli*, 752 F.2d at 1482-1483. The Court agrees.

On July 21, 2003, Plaintiff sought to transfer back to her safety-sensitive bus driver position from her non-safety-sensitive position in the money room. It is undisputed that on that date, Sun Tran's official policy was to require employees to satisfactorily complete a drug test prior to returning to a safety-sensitive position. As such, pursuant to this official policy, Ramsey ordered Plaintiff to immediately complete a drug test. Instead of going immediately to the Clinic, Plaintiff went home first, and then went back to the Clinic to submit a urine sample for the drug test. However, her urine sample was rejected as it was outside the acceptable temperature range for such drug tests. Thereafter, Plaintiff was informed by two clinic employees and a Sun Tran representative that she must submit an observed urine sample before she could leave the Clinic; she was also informed that failure to do this would likely result in suspension and then termination. Instead of actually listening to these three individuals' admonitions and simply submitting another urine sample to comply with Sun Tran's existing policy (which Plaintiff was aware of at that time), Plaintiff decided to scream, cry, pound on the desk, and then leave the clinic without submitting another urine sample.

Naturally, just as she was warned, Sun Tran suspended Plaintiff the very next day on July 22, 2003 pending the completion of the investigation. The investigation confirmed the facts at issue in this case; thereafter, as she was told at the Clinic, Sun Tran fired her for insubordination and illegal drug use effective August 1, 2003. Plaintiff then filed a Step 2 grievance, and Sun Tran denied that grievance in an August 15, 2003 letter. In that letter,

Sun Tran addressed Plaintiff's contention that Ramsey's order was unreasonable in light of the FTA's interpretation pertaining to employees who have been out of a safety-sensitive position for less than 90 days. The letter states in relevant part:

> [T]he Union claims you should not have been given an FTA drug test because you had not been absent from your safety sensitive position performing a non-safety sensitive function for 90 days.
>
> Sun Tran has been consistently complying with [49 C.F.R. §655.41(b)] regardless of how long an employee had been transferred to a safety sensitive function to perform a non-safety sensitive function. Once an employee was transferred back to a safety sensitive function from the non-safety function, a drug test was given. You were treated no differently than anyone else . . .
>
> After you were terminated, you spoke to Mr. Jerry Powers of the FTA who told you that FTA Regulation 655.41(b) is not intended to be applicable when a safety sensitive employee is transferred to a non-safety sensitive function for less than 90 days. Mr. Powers spoke to us after he spoke to you. He informed us that while Section 655.41(b) clearly states that an employee must be drug tested whenever transferred from a non-safety sensitive function to a safety function, the FTA has interpreted it in conjunction with Section 655.41(d) . . .
>
> Mr. Powers acknowledged to us that Section 655.41(b), as written, specifically requires a drug test in all circumstances where an employee is transferred from a non-safety sensitive function to a safety sensitive function. However, he stated that the FTA chooses to interpret it in conjunction with Section 655.41(d) so that a drug test will not be required when a safety sensitive employee is transferred to a non-safety sensitive function and is then transferred back in less than a 90-day period.
>
> Based on Mr. Power's explanation of this FTA interpretation . . . Sun Tran will not continue requiring drug tests when a safety sensitive employee is transferred to a non-safety sensitive function for less than 90 days. Nonetheless, that does not mean that you were not insubordinate by walking out in the middle of your drug test. You had been directed by me to take the drug test, and had also been advised . . . that if you left without submitting an observed urine sample, it would be considered a refusal and you would be terminated.
>
> By directing you to take a drug test, I treated you no differently than other Sun Tran employees who previously had been assigned to light duty, non-safety sensitive functions. In fact, you initially complied with my order and provided an unobserved urine sample. You only refused after you were told that you would be required to provide an observed urine sample . . . It was only then that you left the collection facility, claiming you could not stay . . .
>
> You acknowledged that you were told by [a Sun Tran representative] on the phone before you left the facility that if you left without providing an observed urine sample you would be fired.
>
> Your conduct in refusing to provide a second urine sample after your unobserved urine sample was found unacceptable was clearly insubordinate and justified your discharge. I gave you a reasonable order to take a drug test. You were required to do nothing that other Sun Tran employees previously had already been required to do and complied. The fact that the FTA interprets the regulation differently than Sun Tran did, does not make my order unreasonable. By leaving the collection facility and failing to comply with my order once your unobserved sample was found defective, you engaged in insubordination and were properly discharged for cause.

- 10 -


*See* Defendant's Exhibit 7 (Letter Denying Step 2 Grievance).

Subsequently, on August 25, 2003, the Union sent Plaintiff a letter stating in relevant part:

In response to [your grievance], I have been in contact with . . . Teamsters Local 104's attorney, our representative which advises us in regards to grievances filed.

He has advised us that your decision to leave the [Clinic] . . . was in direct violation of Sun Tran's policy . . . Your first test being recorded as out of the proper temperature range and further your failure to provide a second sample as requested per the collection facility (Sun Tran guidelines), again being a direct violation of policies.

Based on your action and decision to leave the [Clinic] prior to your second requested sample, Teamsters Local 104 is withdrawing the grievance.

*See* Defendant's Ex. 8 (Union Letter Withdrawing Grievance).

In light of the circumstances discussed above, there is no evidence creating an issue of fact supporting Plaintiff's contention that the Union conduct was even remotely "arbitrary, discriminatory, or in bad faith." *Castelli*, 752 F.2d at 1482-1483. Rather, the undisputed facts show that the Union considered the relevant facts, and simply made a good faith "judgment call" that Plaintiff directly violated Sun Tran's policies and that Union resources should no longer be wasted on her grievance as it was without merit. *See id.*; *Johnson*, 756 F.2d at 1465 ("A union's conduct is arbitrary if without rational basis . . . Unions may screen grievances and arbitrate only those they believe are meritorious . . ."); *Burkevich*, 894 F.2d at 352 (union's judgment call, even if poorly made, does not constitute breach of the duty of fair representation). Accordingly, as Plaintiff was required to exhaust the procedures in the CBA and failed to do so, summary judgment is granted in favor of Defendant as to Plaintiff's LMRA claim.[1] *See id.*; *Truex*, 784 F.2d at 1353; *Brown v. Lucky Stores, Inc.*, 246 F.3d at 1189.

**C. Wrongful Discharge**

**1. Family and Medical Leave Act ("FMLA")**

---

[1] In light of the above findings, the Court need not address Defendant's alternative illegal drug use ground for Plaintiff's termination. Further, as discussed above, the Court also notes that even if Plaintiff was not required to exhaust, her claim would fail as the undisputed facts show that Defendant did not violate the CBA as her termination for insubordination complied with the CBA.

Plaintiff claims that she was wrongfully terminated in retaliation for filing a complaint in relation to a federal FMLA violation. As Defendant correctly argues, and as Plaintiff concedes in her response, such a claim is governed by Arizona's Employment Protection Act ("EPA"), specifically A.R.S. §23-1501(3)(c)(ii). Defendant also argues, and Plaintiff again concedes that §1501(3)(c)(ii) only allows claims for retaliation based on complaints concerning a violation of Arizona law.[2] *See Galati v. America West Airlines, Inc.*, 205 Ariz. 290, 292-93, 69 P.3d 1011, 1013-1014 (Ct. App. 2003); A.R.S. §23-1501(3)(c)(ii). As such, Plaintiff's wrongful discharge claim stemming from her FMLA complaint is dismissed.

### 2. Arizona Industrial Commission Complaint

Plaintiff also claims that she was wrongfully terminated in retaliation for filing a complaint alleging violations of A.R.S. §§23-401 *et seq*. In November of 2002, Plaintiff's complaint was filed with the Arizona Industrial Commission, Division of Occupational Safety and Health ("ADOSH"); her complaint alleged that Sun Tran was violating Arizona occupational health and safety statutes by allowing unlawful amounts of carbon monoxide to leak into its buses. As Defendant correctly argues, contrary to Plaintiff's reading of the

---

[2] Plaintiff's only response to Defendant's argument in regards to the FMLA retaliation claim is on page 10, footnote 8 of Plaintiff's Response. In that footnote, Plaintiff asks the Court to allow her to amend her Complaint to assert her claim directly under the FMLA if necessary. The Court notes, however, that this case was removed to federal court in December of 2003, and the original cut off date for amending pleadings as set out in the Scheduling Order was June 8, 2004. *See* Doc. #12. Outside of her one sentence request to amend, Plaintiff offers no explanation as to why she failed to file a motion earlier in this case. Further, Plaintiff cites no authority justifying an amendment at this very late stage of the litigation. Lastly, Defendant would be prejudiced if the Court allowed such an amendment at this late stage in the litigation; if this occurred, Defendant would be forced to expend additional time and money defending Plaintiff's claim. In light of the foregoing, justice certainly would not be served by permitting Plaintiff's extremely late amendment; Plaintiff's request is denied. *See* FED.R.CIV.P. 15(a)(permitting amendments when "justice so requires"); *U.S. v. Dominator, Inc. v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1104 (9th Cir. 1985); *Dedge v. Kendrick*, 849 F.2d 1398 (11th Cir. 1988); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608-10 (9th Cir. 1992)("A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by [parties] without peril . . . Disregard of the [scheduling] order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier.").

relevant statutes,[3] Plaintiff's claim relating to retaliation for filing a complaint with ADOSH must fail as it governed by A.R.S. §23-425. The relevant statutes related to Plaintiff's claim are A.R.S. §§23-1501, 23-408, and 23-425.

A.R.S. §23-1501(3)(b) states in relevant part that:

> An employee has a claim against an employer for termination of employment [if] . . . The employer has terminated the employment relationship of an employee in violation of a statute of this state. <u>If the statute provides a remedy to an employee for a violation of the statute, the remedies provided to an employee for a violation of the statute are the exclusive remedies for the violation of the statute or the public policy set forth in or arising out of the statute, including . . . The occupational safety and health act prescribed in chapter 2, article 10 of this title</u> [which encompasses both AR.S. §23-408 and §23-425]. (emphasis added).

A.R.S. §23-1501(c)(ii) also states in relevant part that the employee has a wrongful termination claim if the employer retaliates because of:

> The disclosure by the employee . . . that [she] has information . . . that the employer . . . has violated . . . the statutes of this state to . . . an employee of a public body or political subdivision of this state or any agency of a public body or political subdivision.

A.R.S. §23-408(F) states in relevant part that:

> An employee . . . who believes that a violation of a safety or health standard . . . exists that threatens physical harm . . . may request an investigation by giving notice to the director or his authorized representative of such violation or danger . . . If upon receipt of such notification the director determines that there are reasonable grounds to believe that such violation or danger exists, he shall make an investigation in accordance with the provisions of this article as soon as practicable

---

[3] *See* Plaintiff's Response at 10-12. As discussed in this Order, Plaintiff's claim falls squarely within §23-1501(3)(b) which means that §23-425 must apply. If the Court were to adopt Plaintiff's suggested interpretation that only §23-1501(c)(ii) applies (which does not restate the limitation of remedies discussed in §23-1501(3)(b)), this would result in an illogical reading of the statute and undermine the clear purposes and directives contained in §23-1501(3)(b). *See State v. Superior Court*, 113 Ariz. 248, 249, 550 P.2d 626, 627 (1976)("whenever possible, the law must be given effect so that no clause or provision is rendered superfluous, void, contradictory or trivial"); *In re Estate of Sullivan*, 38 Ariz. 387, 392, 300P. 193, 195 (1931); *Cronin v. Sheldon*, 195 Ariz. 531, 535, 991 P.2d 231, 235 (1999)(treating both of Plaintiff's retaliation claims under §23-1501(3)(b), not §23-1501(c)(ii)); *Taylor v. Graham County Chamber of Commerce*, 201 Ariz. 184, 188, 33 P.3d 518, 522 (Ct. App. 2001)(the EPA does not authorize a wrongful termination action where another statute provides a remedy for the cause of action) As such, the Court rejects Plaintiff's interpretation of the statute.

to determine if such violation or danger exists.

A.R.S. §23-425 states in relevant part:

> A. No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint . . . under or related to this article . . . because of the exercise by such employee on behalf of himself or others of any right afforded by this article [which includes the statutory right to file a complaint requesting an investigation under §23-408].
> B. Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this section may within thirty days after such violation occurs, file a complaint with the [ADOSH] commission alleging such discrimination. Upon receipt of such complaint, the commission shall cause such investigation to be made as it deems appropriate. If upon such investigation, the commission determines that the provisions of this section have been violated, it shall bring an action in any appropriate superior court against such person. In any such action the superior court shall have jurisdiction for cause shown to restrain violations of subsection A and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay.

It is clear that §23-1501(3)(b) is the applicable section of the EPA to be applied under the facts of this case; this section dictates that §23-425 provides the exclusive remedy for Plaintiff. Specifically, §1501(3)(b) provides that if an employee is terminated in violation of a state statute, that employee has a claim for wrongful termination; further, if the statute that was violated by the employer provides a remedy, that is the exclusive remedy for the aggrieved employee. Here, Plaintiff reported unlawful amounts of carbon monoxide leaking into Sun Tran buses to ADOSH; this conduct is statutorily protected by §23-408. Thereafter, Plaintiff alleges that she was fired (retaliated against) by Sun Tran because she exercised her statutorily protected right under §23-408 to file a complaint with ADOSH. By allegedly firing Plaintiff for this reason, Sun Tran terminated her "in violation of a statute" of Arizona. *See* §23-1501(3)(b). The Arizona statute which was violated by this alleged wrongful termination was §23-425(A) which provides that an employer shall not discharge any employee because such employee has filed any complaint under the occupational safety and health statutes which encompasses the right to file a complaint with ADOSH under §23-408. As Sun Tran's alleged conduct violated §23-425(A), Plaintiff had a remedy under §23-425(B). This section directs the employee

- 14 -

to file a complaint with ADOSH within 30 days of the alleged violation, and ADOSH is thereafter required to conduct an investigation. *See* §23-425(B). If that investigation reveals a violation (of §23-408 in this case), ADOSH "shall bring an action in any appropriate superior court" which may "order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay." *Id.* As Plaintiff's claim and exclusive remedy were governed by §23-425(B) pursuant to the explicit language in §23-1501(3)(b), Plaintiff's wrongful termination claim must fail. *See* §§23-1501(3)(b), 23-1501(b)(ii), 23-408(F), 23-425; *Taylor*, 201 Ariz. at 188, 33 P.3d at 522 (the EPA does not authorize a wrongful termination action where another statute provides a remedy for the cause of action). As such, summary judgment is granted in favor of Defendant as to Plaintiff's claim related to her ADOSH complaint.[4]

---

[4] In light of the above ruling, the Court need not address Defendant's argument that Plaintiff fails to meet her prima facie case of retaliation for filing her ADOSH complaint. Nonetheless, the Court notes that Plaintiff failed to introduce any evidence creating an issue of fact as to a causal connection between her termination and her ADOSH complaint. Further, there is no evidence creating an issue of fact as to the legitimate reasons offered by Sun Tran justifying Plaintiff's termination. *See Najar v. State*, 198 Ariz. 345, 348, 9 P.3d 1084, 1087 (Ct. App. 2000)(discussing the general standard for retaliation claims in civil rights cases). To the extent Plaintiff claims that the general retaliation standard used in civil rights cases is inapplicable to her case, the Court rejects her contention as she cites no authority showing that this standard is inapplicable, and she also fails to cite any other controlling legal standard.

## IV. Conclusion

Accordingly, IT IS HEREBY ORDERED as follows:

(1) Defendant's Motion for Summary Judgment (Doc. #43) is **granted**.

(2) Any other pending motions are **denied as moot**.

(3) This case is **dismissed with prejudice**.

(4) The **Clerk of the Court shall enter judgment and close the file in this matter**.

DATED this 2nd day of November, 2005.

*Cindy K. Jorgenson*
Cindy K. Jorgenson
United States District Judge